## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TIMOTHY MANGEL,            )
       Plaintiff          )
                       )     **C.A.No. 14-147ERIE**
                       )
vs.                    )
                       )     **District Judge Rothstein**
**GRAHAM PACKAGING COMPANY, LP,**   )     **Magistrate Judge Baxter**
       **Defendant.**         )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that the motion for summary judgment filed by Defendant

[ECF No. 29] be granted in part and denied in part as follows:

- DENIED as to Plaintiff's discrimination claims under ADA/PHRA;

- DENIED as to Plaintiff's failure to accommodate claims under the ADA/PHRA;

- GRANTED in favor of Defendant on Plaintiff's retaliation claims under the ADA/PHRA;

- DENIED as to Plaintiff's hostile work environment claims under the ADA/PHRA;

- DENIED as to Plaintiff's interference claim under the FMLA; and

- DENIED as to Plaintiff's retaliation claim under the FMLA.

### II.    REPORT

#### A. Relevant Procedural History

Plaintiff Timothy Mangel brings this civil action against his former employer, Graham

Packaging, for violations of the Family and Medical Leave Act, the Americans with Disabilities

Act, and the Pennsylvania Human Relations Act. Plaintiff alleges claims of discrimination, failure to accommodate, retaliation and hostile work environment under ADA and PHRA and claims of interference and retaliation under FMLA.

Defendant has moved for summary judgment on all claims against it. Plaintiff has filed a brief in opposition and Defendant has filed a reply brief. This motion is ripe for disposition by this Court.

### B. Standards of Review

#### 1) Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 quoting Fed.R.Civ.P. 56.

2

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex, 477 U.S. at 330. See also Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). When a non-moving party would have the burden of proof at trial, the moving party has no burden to negate the opponent's claim. Celotex, 477 U.S. at 323. The moving party need not produce any evidence showing the absence of a genuine issue of material fact. Id. at 325. "Instead, ... the burden on the moving party may be discharged by showing - that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. Id. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id.

### 2) *McDonnell Douglas* **Burden Shifting Framework**

The majority of Plaintiff's claims are subject to the *McDonnell Douglas* burden shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See also Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996) (holding the *McDonnell Douglas* analytical framework applies to ADA claims). *McDonnell Douglas* and other subsequent decisions have "established an allocation of the burden of production and an order for the presentation of proof in ... discriminatory-treatment cases." Reeves v. Sanderson Plumbing products, Inc., 530 U.S. 133, 143 (2000) quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).

3

Under this *McDonnell Douglas* framework, the plaintiff initially bears the burden of establishing his *prima facie* claim of discrimination. McDonnell Douglas, 411 U.S. at 802. Once a plaintiff demonstrates a *prima facie* case, there is a presumption of discrimination. St. Mary's Honor Center, 509 U.S. at 506, citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).

If the plaintiff successfully meets his burden of establishing the presumption of discrimination, the burden then shifts to the employer to produce evidence that the plaintiff was rejected or disciplined for some legitimate non-discriminatory reason. McDonnell Douglas, 411 U.S. at 802. This burden is one of production, not persuasion; it "can involve no credibility assessment." Reeves, 530 U.S. at 142, quoting St. Mary's Honor Center, 509 U.S. at 509.

Once the employer carries its burden, the burden of production returns to the plaintiff to demonstrate, by a preponderance of the evidence, that the defendant's proffered reason is pretext and "unworthy of credence." Id. at 143. To show that the defendant's rationale is pre-textual the plaintiff must adduce evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Tomaso v. Boeing, 445 F.3d 702, 706 (3d Cir. 2006) citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). To defeat summary judgment, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons. Id.

4

As the Reeves Court explained:

> Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. And in attempting to satisfy this burden, the plaintiff – once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision – must be afforded the opportunity to provide by a preponderance of thee evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence. Moreover, although the presumption of discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's *prima facie* case and inferences properly drawn therefrom … on the issue of whether the defendant's explanation is pretextual.

530 U.S. at 143 (internal citations omitted).

## C. Plaintiff's Narrative

There are very few undisputed facts in this case. Nonetheless, both sides must deal with the evidence presented by the opposing party, as well as the inconsistencies in their own evidence. For example, in his deposition testimony, Plaintiff is unclear as to several important dates relating to his claims: when his last performance evaluation was conducted, who conducted his last performance evaluation, when he met with the plant manager to review that performance evaluation, when he received leg braces, and the dates upon which derogatory comments were made about his limp and his leg braces. By way of further example, on Defendant's side, its own plant manager has given conflicting sworn testimony about whether he knew about Plaintiff's medical issues and if he knew, when he was first informed. Furthermore, Defendant's own witnesses relate differing accounts as to who was involved in the termination of Plaintiff's

5

employment.[1] For purposes of this Report and Recommendation, the Court will relate Plaintiff's narrative to the extent it is necessary to begin a review and analysis of his claims.

Plaintiff Timothy Mangel was hired by Defendant Graham Packaging Company in April of 2005. Defendant is a packaging company that maintains several manufacturing plants across the United States, one of which is located in Bradford, Pennsylvania. As of August 2005, Plaintiff became a Label Operator and continued to work in this position until his termination in October of 2013. As a Label Operator, Plaintiff's job duties included changing the rolls of labels on his line, watching the machine, making sure the machines were not jammed, performing tests on cases and other housekeeping duties.

Plaintiff suffers from neuropathy, a condition which causes the nerves in his muscles to die and his muscles to degenerate. In his complaint, Plaintiff avers that his neuropathy began about 2010. Plaintiff has lost mobility in his ankles and feet and is limited in his ability to walk. Prior to the onset of the neuropathy, Plaintiff also suffered from a degenerative bone disorder affecting his back.

Plaintiff believes that throughout the last three years of his employment, including up until his termination, he was subjected to blatantly discriminatory and offensive comments regarding his medical conditions and their effect on his functioning, including by Tina Stockton who he believes recommended and participated in the decision to terminate him.

In early January of 2012, Supervisor Dan Lutz conducted a performance evaluation of Plaintiff. ECF No. 36-14, pages 2-4. The score Plaintiff received on this evaluation indicated that Plaintiff "need[ed] improvement." At least part of the low score was based on attendance and

---

[1] This list is not exhaustive on either side.

6

tardiness. Id. At some time in 2012, Plaintiff obtained leg braces. In March 2013, Plaintiff was counseled for mislabeling 22 units of production. ECF No. 31-9, page 2.

Over the last year of his employment with Defendant, Plaintiff began to use his allotted vacation time to take time off work for medical appointments and/or flare-ups related to his physical impairments. After using all of his vacation time, Plaintiff began to use sick time for these appointments or flare-ups.

In his complaint, Plaintiff alleges that, approximately two months before his October 2013 termination, he received a negative performance review. ECF No. 24, ¶ 23. The evidence before the Court record reflects that Plaintiff received a negative performance review in April 2013, more than five months before his October termination.

Plaintiff's annual performance review was conducted by Dan Lutz in late April of 2013. ECF No. 31-10. In his deposition testimony, Plaintiff characterizes this review as low-scoring based on attendance only [ECF No. 31-1, page 25], but the record evidence demonstrates the following: Plaintiff scored 311 points out of a possible 480 points, which resulted in a rating of 65%; the form indicates that such a rating is equivalent to "employee needs improvement"; Plaintiff scored poorly in "demonstrates awareness and understanding of defects," "displays commitment to excellence and looks for ways to improve and promote high quality," and attendance and punctuality. ECF No. 31-10.

Sometime shortly after the performance evaluation, Plaintiff was required to meet with Plant Manager Dustin Craig to review the poor evaluation. Plaintiff refers to this meeting as a "coaching" and cannot recall when it occurred. ECF No. 31-1, pages 121-22, 134, 273-74, and 280-81. The document itself is signed by Craig who indicated "reviewed with employee" on

7

May 3, 2013. ECF No. 31-10, page 21. Craig remembers the meeting as happening on May 3rd, as he indicated on the document. ECF No. 31-12, Craig Deposition, pages 19, 24. Importantly, the parties agree that the subject of FMLA leave arose for the first time during this meeting. ECF No. 31-1, Plaintiff Deposition; ECF No. 31-12, Craig Deposition, pages 19-22.

According to Plaintiff, during this meeting, he asked Craig about FMLA "because I didn't want to get another bad review for having to call off sick and get penalized for the sick days." ECF No. 31-1, page 25. In response, Craig told Plaintiff he (Craig) "would get me the information," but "that it probably wouldn't help my situation." Id. at 25, 29. Plaintiff claims he asked Craig for the paperwork again a week later. Id. at 29. Craig then told Plaintiff that he should get the paperwork from "the Human Resources lady," Cassandra Salisbury. Id. Plaintiff then contacted Salisbury.[2]

Plaintiff alleges that soon after he requested FMLA leave in early May of 2013, Defendant's management began to direct hostile and disparate treatment and harassment toward him. ECF No. 24, ¶ 27. Plaintiff claims he was "nitpicked, singled out, and treated in a generally demeaning and condescending manner" Id. at ¶ 28.

Between his April annual performance review and his termination in October, the record reflects that Plaintiff received several warnings or reprimands. ECF No. 31-9, page 2. On June 11, 2013, Plaintiff was observed using a cell phone on the plant floor and he was suspended for three days. ECF No. 31-9, page 15. In August of 2013, Plaintiff was issued a written discipline based on attendance issues. ECF No. 36-18, page 2. This document specifically warns: "It is of the utmost importance that Tim comes to work as scheduled." Id. On September 27, 2013,

---

[2] The accounts related by Craig and Salisbury differ substantially from Plaintiff's recollection. These disputes will be addressed herein.

Plaintiff was reprimanded for failure to follow quality procedures when a label change was not completed correctly. ECF No. 31-9, page 16. On October 7, 2013, Plaintiff was reprimanded for running a defective product. ECF No. 31-9, page 17.

On October 8, 2013, Plaintiff was reprimanded for an incident that occurred on his line. ECF No. 31-9, page 18. Under Graham's progressive discipline policy, this reprimand became the basis for the termination of Plaintiff's employment shortly thereafter. The reprimand for this incident is the subject of a considerable factual dispute between the parties (and amongst Defendant's own employees) the specifics of which will be addressed below. While there is conflicting testimony as to who made the decision to terminate Plaintiff's employment, the parties agree that the decision was communicated to Plaintiff by Plant Manager Craig.

## D. The ADA/PHRA Claims[3]

### 1) Disability Discrimination

Plaintiff claims that his employment was terminated by Defendant because of his health conditions and due to his record of impairment. ECF No. 24, ¶ 61.

In order to establish a *prima facie* case of disability discrimination under the ADA, the plaintiff must show:

    (1) he is a disabled person within the meaning of the ADA;

    (2) he is otherwise qualified to perform the essential functions of the job, with or
        without reasonable accommodations by the employer; and

    (3) he has suffered an otherwise adverse employment decision as a result of
        discrimination.

---

[3] The ADA and PHRA are interpreted consistently and have the same standard for determination of liability. McDonald v. Pa., Dep't of Pub. Welfare, Polk Ctr., 62 F.3d 92, 94-95 (3d Cir. 1995).

Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999).

Generally, the Court's first inquiry is whether Plaintiff is disabled within the context of the ADA. Here, Defendant acknowledges, for purposes of this motion, that there is likely a genuine issue of material fact as to whether Plaintiff qualifies as a disabled individual under the statute. So then, Defendant argues that Plaintiff has failed to meet his burden of establishing his *prima facie* case of discrimination at the third prong, contending that Plaintiff has produced no evidence that suggests that Plaintiff suffered an adverse employment action as the result of disability discrimination.

Under the *McDonnell Douglas* framework, Plaintiff has the initial burden of establishing his *prima facie* case of discrimination. Here, to do so, Plaintiff must point to evidence in the record sufficient to create a genuine issue of factual dispute as to whether he suffered an adverse employment decision as a result of discrimination. If he does so, the burden of production shifts to Defendant to articulate some legitimate reason for its decision. Thereafter, if Defendant meets its burden, Plaintiff must point to "some evidence, direct or circumstantial, from which the factfinder could reasonably ... disbelieve that articulated legitimate reason." Fuentes, 132 F.3d at 764.

Plaintiff points to the following as evidence of his *prima facie* case (as well as evidence of Defendant's pretext):

> Throughout the last three years of his employment, including up until his termination, Plaintiff was subjected to blatantly discriminatory and offensive comments regarding his medical conditions and their effect on his functioning, including by Tina Stockton who recommended and participated in the decision to terminate him.

10

> After Defendant observed Plaintiff walk with a limp and after they learned of
> his medical conditions, they micro-managed him, issued him unwarranted
> negative evaluations and singled him out for unwarranted discipline.
>
> Defendant's contradictory and inconsistent explanation and testimony
> regarding the events and circumstances surrounding Plaintiff's termination is
> extremely suspicious and reveals that Plaintiff was terminated under
> circumstances giving rise to an inference of discrimination.
>
> The record proves that Stockton reported to Murray that she saw Plaintiff for
> ten minutes preparing a list of bills while on duty and Craig said Plaintiff later
> admitted to doing same. But, Plaintiff testified that he was not preparing a list
> of bills or any other list and that he never admitted to Craig that he had done
> so. As a result, the very circumstances of the events allegedly leading to
> Plaintiff's termination are disputed.

This Court need only look to the dispute surrounding the last reprimand and

Defendant's decision to terminate Plaintiff to find important factual issues in dispute that make

summary judgment inappropriate on this claim. While the parties do not dispute that the

reprimand for the incident on October 8th was the reason for the termination of Plaintiff's

employment, they do, however, dispute almost everything else about the incident and Plaintiff's

subsequent termination[4] and Defendant's own witnesses contradict each other as to who

---

[4] Plaintiff was reprimanded for not being on his line when his line jammed up. Plaintiff was
accused of writing out a list of his bills instead of watching the line. His supervisor Tina
Stockton saw the jam and began to look for Plaintiff and his co-worker. Christopher Murray,
quality manager, testified that Tina Stockton told him that she saw Plaintiff sitting at a desk,
writing out a list of his bills while he was to be watching his line. ECF No. 36-33, Murray
Deposition, page 122. Although her signature is not on the document, Tina Stockton wrote the
Reprimand about this incident. ECF No. 36-34, Stockton Deposition, pages 42-43. The
Reprimand does not indicate that Stockton actually saw Plaintiff writing a list of bills, but does
indicate that she found a paper with a list of Plaintiff's bills on the desk. ECF No. 36-22.
According to the written Reprimand, when she asked Plaintiff if he was supposed to be writing
bills on company time, Plaintiff responded no. Stockton then "asked Plaintiff if anyone had ever
talked to him about this before, to which he replied yes." Id.

   Plant Manager Dustin Craig testified that Plaintiff later admitted to him that he was
working on a list of bills instead of watching his line. ECF No. 36-27, Craig Deposition, page

11

participated in the decision to terminate Plaintiff's employment.[5] Furthermore, there is

conflicting testimony as to which of these purported decision-makers knew of Plaintiff's medical

conditions.

The evidence before this Court is such that a reasonable factfinder could conclude that

the October 8th incident was falsely reported by Stockton and that she recommended his

termination of this basis. Accordingly, summary judgment should be denied on the disability

discrimination claims under ADA and PHRA.

## 2) Failure to Accommodate

The ADA specifically provides that an employer "'discriminates' against a qualified

individual with a disability when the employer does 'not make reasonable accommodations to

the known physical or mental limitations of the individual unless the employer can demonstrate

that the accommodation would impose an undue hardship on the operation of the business of the

employer.'" Williams v. Phila. Hous. Auth. Police Dep't., 380 F.3d 751, 761 (3d Cir. 2004)

quoting Taylor, 184 F.3d at 106. In order to establish a *prima facie* case of discrimination for

---

100; ECF No. 36-28,Transcript of Craig's testimony before Unemployment Compensation Board
of Review, page 15. Co-worker Scott Swackhamer testified that he actually saw Plaintiff writing
out this list of bills. ECF No. 36-35, pages 51-52, 58. In his deposition testimony, Plaintiff
denied that he was writing out bills at his desk instead of watching his line and he denied that he
admitted writing out the list to either Stockton or Craig. ECF No. 36-1, Plaintiff's Deposition,
page 53.

[5] It is Plaintiff's position that Craig, Murray, Kelly, Stockton and Salisbury participated in the
decision to terminate Plaintiff's employment. It is Defendant's position that Plant Manager
Craig, Quality Manager Murray, and Corporate Human Resources Manager Natoshia Kelly met
to discuss the termination of Plaintiff's employment following the October 8th reprimand.
Murray testified he, Craig and Salisbury made the decision to terminate, but that Kelly and/or
Stockton may have also been in the meeting. ECF No. 36-33, pages 125-27. Kelly recalls that the
meeting included herself, Craig, and Murray. ECF No. 36-31, pages 38-40.

failure to accommodate, a plaintiff must show: 1) he is a disabled person within the meaning of the ADA; 2) that he is otherwise qualified to perform the essential functions of the job, with reasonable accommodations; 3) the employer had notice of the alleged disability; and 4) the employer failed to accommodate him. Conneen v. MBNA America Bank, 182 F.Supp.2d 370, 376-77 (D.Del. 2002) citing Rhodes v. FDIC, 257 F.3d 373, 387 n.11 (4th Cir. 2001).

"Reasonable accommodation" includes the employer's reasonable efforts to assist the employee and to communicate with the employee in good faith under what has been termed a duty to engage in the "interactive process". Williams, 380 F.3d at 761. Both employers and employees have a duty to engage in this interactive process that "requires both parties to attempt to identify potential accommodations that will permit the disabled worker to continue working." Conneen, 182 F.Supp.2d at 377. See also Taylor, 184 F.3d at 312 (In handling a disabled employee's request for a reasonable accommodation, "both parties [employers and employees] have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith.").

Here, Plaintiff claims that he requested accommodation under the ADA by way of his request for FMLA leave.[6] See McCall v. City of Phila., 2015 WL 7274068, at * 2 (3d Cir. Nov. 18, 2015) (recognizing that a request for FMLA leave may qualify in certain circumstances as a request for an accommodation under the ADA). In his complaint, Plaintiff alleges that he "made clear his need for time off from work due to his disabilities (a reasonable accommodation) but was refused any *interactive process* from Defendant." ECF No. 24, ¶ 62 (emphasis added).

---

[6] This is the only action Plaintiff identifies as a requested accommodation.

To demonstrate that an employer failed to undertake the required interactive process in good faith, an employee must show:

1) The employer knew about the employee's disability;

2) The employee requested accommodations or assistance for his disability;

3) The employer did not make a good faith effort to assist the employee in seeking accommodations; and

4) The employee could have been reasonably accommodated but for the employer's lack of good faith.

Williams, 380 F.3d at 772, quoting Taylor, 184 F.3d at 319-20. See also Hohider v. United Parcel Service, 574 F.3d 169 (3d Cir. 2009).

At the core of both the first and second elements is a claimant's duty to notify his employer. There is "nothing in the ADA [that] mandates an employer to speculate as to the extent of [an employee's] disability or [his] need or desire for an accommodation simply because it is aware that he is ill." Conneen, 182 F.Supp.2d at 378, citing Parelli v. Bell-Atlantic Pennsylvania, 1999 WL 1060706 (E.D. Pa. 1999). An employer's duty to participate in the interactive process does not arise until the employee requests a reasonable accommodation. Conneen, 182 F.Supp.2d at 379, citing Taylor v. Principal Financial Group, 93 F.3d 155, 165 (5th Cir. 1996).

An employee's request for accommodation need not be formal or mention specifically the ADA or "requested accommodation," but the employee "must make clear that the employee wants assistance for his disability." Reifer v. Colonial Intermediate Unit, 462 F.Supp.2d 621, 634 (E.D. Pa. Nov.7, 2006) quoting Taylor, 184 F.3d at 313 and citing 42 U.S.C. § 12112(b)(5)(A). "What matters under the ADA are not formalisms about the manner of the request, but whether

14

the employee ... provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and [the] desire for an accommodation." Taylor, 184 F.3d at 313.

Plaintiff argues that his request for FMLA leave at a meeting with Dustin Craig in early May 2013 was adequate notice to trigger the interactive process with Defendant. This meeting between Plaintiff and Craig, the plant manager, was precipitated by Plaintiff's low score on an annual performance review (conducted by Plaintiff's supervisor Dan Lutz). The record reflects that Plaintiff's poor score was based **in part** on his three absences and lack of punctuality.[7] The parties agree that the subject of FMLA leave arose for the first time at this meeting. ECF No. 31-1, Plaintiff Deposition; ECF No. 31-12, Craig Deposition, pages 19-22.

According to Plaintiff, during this meeting, he asked Craig about FMLA "because I didn't want to get another bad review for having to call off sick and get penalized for the sick days." ECF No. 31-1, page 25. In response, Craig told Plaintiff he (Craig) "would get me the information" but "that it probably wouldn't help my situation." Id. at 25, 29. Plaintiff claims he asked Craig for the paperwork again a week later. Id. at 29. Craig then told Plaintiff that he should get the paperwork from "the Human Resources lady" Cassandra Salisbury. Id. Plaintiff then contacted Salisbury, "about a week after I asked [Craig] the second time, he said he would have her draw them up, so I went to her to ask her if she had." Id. According to Plaintiff, Salisbury's response was "she said that if I needed to get FMLA papers that she would have

---

[7] Plaintiff scored 311 points out of a possible 480 points, which resulted in a rating of 65%. The form indicates that such a rating is equivalent to "employee needs improvement." Plaintiff scored poorly in two categories "demonstrates awareness and understanding of defects" and "displays commitment to excellence and looks for ways to improve and promote high quality." The review also scored Plaintiff poorly on attendance and punctuality requirements. ECF No. 31-10.

15

them --- she would get them out for me and get them ready for me." Id. at 30. Plaintiff

characterizes this conversation with Salisbury as about a week after the second conversation with

Craig, but less than a week before he was terminated in October. Id.[8] Plaintiff did not have

occasion to follow up with Salisbury because he was terminated in the meantime. Id.

Whether "notice" was given cannot be determined on summary judgment. There are

considerable factual disputes about these three conversations.[9] Moreover, "what an employee's

initial notice must include depends on what the employer already knows" about the employee's

disability. Taylor, 184 F.3d at 313. Here, there is significant dispute about whether Craig knew

about Plaintiff's medical condition. Compare ECF No. 31-12, Craig Deposition, with ECF No.

36-28, Transcript of Hearing before Unemployment Board of Review. Because of the dispute

about what Defendant knew about Plaintiff's disability, it is impossible to determine whether any

of these three conversations constituted notice.

The motion for summary judgment should be denied in favor of Defendant on Plaintiff's

failure to accommodate claims under the ADA and PHRA.

---

[8] The Court notes that Plaintiff's testimony in this regard does not provide a clear timeline.
Plaintiff cannot recall when the "coaching" meeting with Craig occurred. ECF No. 31-1, pages
121-22, 134, 273-74, 280-81. Plaintiff testified that his first conversation with Craig was at the
annual performance evaluation (which other evidence reflects occurred in early May), then
Plaintiff talked with Craig about a week later, and talked to Salisbury about a week after that (but
Plaintiff says it was shortly before he was terminated in October).

[9] Plaintiff's version of events differs from those of Craig and Salisbury. In his deposition
testimony, Craig remembers discussing FMLA leave but only generally and Craig denies ever
knowing that Plaintiff had any disability or health condition of any kind. ECF No. 31-12.
However, in his testimony before the Commonwealth Unemployment Board of Review, Craig
admitted that he knew Plaintiff "had some health issues that he needed to resolve" and "he
needed time off to do that." ECF No. 36-28, pages 28-29. Salisbury claims that she never had
any conversation with Plaintiff about leave. ECF No. 36-22, Salisbury Deposition.

### 3) **Retaliation**

In his complaint, Plaintiff alleges that after he "made clear his need for time off from work due to his disabilities (a reasonable accommodation)," he was "terminated in retaliation for requesting medical accommodations in the form of time off from work." ECF No. 24, ¶ ¶ 62-63.

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show: 1) protected employee activity; 2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and 3) a causal connection between the employee's protected activity and the employer's adverse action. Krouse v. American Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997) citing Woodson v. Scott Paper Co., 109 f3d 913, 920 (3d Cir. 1997).[10]

Plaintiff claims that he engaged in protected activity under the ADA by "requesting time off for his medical conditions in the form of FMLA leave." ECF No. 35, page 33. Plaintiff has not met his burden to demonstrate a *prima facie* claim of retaliation since he has not produced any evidence he engaged in the identified protected activity (as actually requesting time off in the form of FMLA leave). Plaintiff's deposition testimony reveals that he did not actually request time off for any medical condition between May and October and he did not have the need to take any such leave in that time period. ECF No. 31-1, pages 25-31.

Summary judgment should be granted in favor of Defendant as to Plaintiff's retaliation claims under the ADA and PHRA.

---

[10] Like the *McDonnell Douglas* framework, if an employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to advance a legitimate non-retaliatory reason for its adverse employment action. Id. If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action. Id.

### 4) Hostile Work Environment

Plaintiff claims he was subjected to a hostile work environment. Plaintiff claims he was called offensive names by his coworkers and his supervisors, that coworkers ridiculed the way he walked, and that coworkers repeatedly told him they were upset and worried that he would ruin their safety bonuses because of the perceived inability to safely do his job.

In order to state a discrimination claim based on hostile work environment, a plaintiff must show: "1) he is a qualified individual with a disability under ADA; 2) he was subject to unwelcome harassment; 3) the harassment was based on his disability or a request for accommodation; 4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment; and 5) the employer knew or should have known of the harassment and failed to take prompt effective remedial action." Lowenstein v. Catholic Health East, 820 F.Supp.2d 639, 646-47 (E.D.Pa. 2011) citing Walton v. Mental Health Ass'n of S.E.Pa., 168 F.3d 661, 667 (3d Cir. 1999). In determining the existence of a hostile work environment, the totality of the circumstances must be examined. Cardenas v. Massey 269 F.3d 251, 260 (3d Cir. 2001).

Defendant's argument against this claim is two-fold. First, Defendant argues that Plaintiff cannot point to evidence that any harassment was sufficiently severe or pervasive to alter the conditions of his employment so as to create an abusive working environment. In order to "judge whether such an environment is hostile or abusive, courts must consider all the circumstances including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a more offensive utterance; and whether it unreasonably interferes

18

with an employee's work performance.'" Barclay v. Amtrak, 435 F.Supp.2d 438, 451 (E.D. Pa. 2006) quoting Walton, 168 F.3d at 667.

In his deposition testimony, Plaintiff swears that he was harassed on a "daily" basis by "everybody in the plant" for years and that such name-calling was so commonplace it became "the norm." ECF No. 31-1, pages 37, 41. Plaintiff further testified that the harassment made him feel hurt, stressed and eager to leave the workplace every day. Id. at page 68. For purposes of this motion, Plaintiff's testimony is sufficient to show the pervasiveness necessary to create an abusive environment and overcome Defendant's argument in this regard.[11]

Next, Defendant argues that Plaintiff cannot point to any evidence to show that it knew or should have known about the harassment and failed to take prompt remedial action. Plaintiff testified that he complained about the name-calling by co-workers[12] to Dan Lutz sometime before April 2013. Id. at pages 40-42. Thereafter, at shift meetings, general warnings were issued that workers should refrain from name-calling, but the name-calling persisted. Id. at 42. This evidence is sufficient to show that Defendant had knowledge of the hostile work environment.

Summary judgment on this claim should be denied.

### E. The FMLA Claims

The Family and Medical Leave Act "entitle[s] employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). The leave provisions of the FMLA are "wholly

---

[11] Weldon v. Kraft , Inc., 896 F.2d 793, 800 (3d Cir. 1990) ("there is no rule of law that the testimony of a discrimination plaintiff, standing alone, can never make out a case of discrimination that could withstand a summary judgment motion.").

[12] Plaintiff admits that he did not complain about offensive comments made by a previous retired supervisor. ECF No. 31-1.

distinct from the reasonable accommodation obligations of employers covered under the ADA."
29 C.F.R. § 825.702(a).

Even when these qualifying circumstances exist, employees cannot invoke rights under
the FMLA if they fail to provide adequate notice of their need for leave. 29 U.S.C. § 2612(e).
Once employees invoke rights granted under the FMLA, employers may not "interfere with,
restrain, or deny the exercise of or attempt to exercise" these rights. 29 U.S.C. § 2615(b)(1). Nor
may employers "discharge or in any other manner discriminate against any individual for
opposing any practice made unlawful." 29 U.S.C. § 2615(a)(2). "The former provision is
generally, if imperfectly, referred to as 'interference' whereas the latter is often referred to as
'retaliation.'" Lichtenstein v. University of Pittsburgh Medical Center, 691 F.3d 294, 301 (3d
Cir. 2012) quoting Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005).


### 1) Interference

Interference claims are not subject to the usual *McDonnell Douglas* burden shifting
analysis and there is no intent required for a violation of the FMLA in this regard. Sommer v.
Vanguard Group, 461 F.3d 397, 399 (3d Cir. 2006). The FMLA's regulations define interference
as including the refusal to authorize FMLA leave, as well as discouraging an employee from
using such leave. 29 C.F.R. § 825.220(b). An employer's failure to advise an employee of his
right to FMLA leave also constitutes interference in violation of § 2615(a)(1). See Conoshenti v.
Public Serv. Elec. & Gas Co., 364 F.3d 135, 144-45 (3d Cir. 2004).

Plaintiff claims interference with his FMLA rights based on:

- Defendant's failure to discuss his FMLA leave options with him or whether he
  was eligible;

- Defendant's failure to provide documents or notification (informing him of his rights and responsibilities); and

- Defendant's providing him misinformation about his right to take leave.

ECF No. 35, page 43.[13]

Defendant argues that Plaintiff has failed to demonstrate the necessary prejudice as an employee must show prejudice by "establishing that this failure to advise rendered him unable to exercise that right in a meaningful way, thereby causing injury." Conoshenti, 364 F.3d at 143-44. Defendant focuses its argument only on the time period between the alleged FMLA request in May and Plaintiff's termination in October. See ECF No. 30, page 21 ("Plaintiff's admission that he had no need for FMLA leave between his alleged May 2013 FMLA request and his October 2013 termination renders him unable to establish the existence of prejudice, and entitles Defendant to summary judgment as a matter of law.").

Defendant has focused its argument on this claim too narrowly. Plaintiff's interference claim is much broader than the May to October 2013 time period and so summary judgment should be denied. As the Third Circuit has explained, the point of the FMLA is to provide employees the opportunity to make informed choices about their leave:

> The purpose of the regulations enacted by DOL ... is to ensure that employers allow their employees to make informed decisions about leave ... The overall intent of the FMLA is lost when an employer fails to provide an employee with the opportunity to make informed decisions about her leave options and limitations. Without such an opportunity, the employee has not received the

---

[13] Plaintiff also claims interference based on Defendant's failure to determine whether Plaintiff was eligible for leave and Defendant's failure to grant him leave. However, as discussed *supra*, the evidence shows that Plaintiff did not actually request leave. So then, Defendant cannot be held liable for failure to determine whether Plaintiff was eligible for leave or failure to grant him leave.

statutory benefit of taking leave with the reassurance that her employment, under proscribed conditions, will be waiting for her when she is able to return to work.

Conoshenti, 364 F.3d at 144.

Here, the evidence reflects that despite working at the company since 2005, and suffering from a medical condition or conditions that necessitated time off from work since around 2011, as well as having been rated low on attendance in performance reviews for both 2012 and 2013, Plaintiff did not learn about FMLA until sometime in 2013. Furthermore, when it was first discussed in the May 2013 meeting with Craig, Plaintiff testified that Craig informed him that "it probably wouldn't help my situation." ECF No. 31-1, page 29.

Summary judgment should be denied as to Plaintiff's interference claim.

## 2) Retaliation

Under the familiar *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a *prima facie* case. To do so, he must point to evidence in the record sufficient to create a genuine factual dispute about each of the three elements of his retaliation claim: "1) he invoked his right to FMLA-qualifying leave[14]; 2) he suffered an adverse employment decision;

---

[14] In providing notice under FMLA, "the employee need not use any magic words." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402 (3d Cir. 2007). In FMLA, the critical question is how the information conveyed to the employer is reasonably interpreted. An employee who does not cite to the FMLA or provide the exact dates or duration of the leave requested nonetheless may have provided his employer with reasonably adequate information under the circumstances to understand that the employee seeks leave under the FMLA. Id. How the employee's notice is reasonably interpreted is generally a question of fact, not law. Finley v. Pennsylvania Department of Corrections, 2015 WL 1967262, at *12 (M.D. Pa. Apr. 30, 2015) quoting Lichtenstein, 691 F.3d at 303.

22

and 3) the adverse action was causally related to the invocation of FMLA rights." Lichtenstein, 691 F.3d 294, 302 (3d Cir. 2012).[15]

A causal connection can be established by a suggestive "temporal proximity." Id. at 302. There are three points that could serve as the invocation of FMLA rights: Plaintiff's "coaching" meeting with Craig, Plaintiff's follow-up with Craig, or Plaintiff's conversation with Salisbury. There is conflicting testimony as to all three of these events. Here, because the temporal proximity between the possible invocation of FMLA rights and the termination of Plaintiff's employment is fraught with factual dispute, summary judgment is inappropriate on this claim.

## III.  CONCLUSION

It is respectfully recommended that that the motion for summary judgment filed by Defendant [ECF No. 29] be granted in part and denied in part as follows:

- DENIED as to Plaintiff's discrimination claims under ADA/PHRA;
- DENIED as to Plaintiff's failure to accommodate claims under the ADA/PHRA;
- GRANTED in favor of Defendant on Plaintiff's retaliation claims under the ADA/PHRA;
- DENIED as to Plaintiff's hostile work environment claims under the ADA/PHRA;
- DENIED as to Plaintiff's interference claim under the FMLA; and
- DENIED as to Plaintiff's retaliation claim under the FMLA.

---

[15] If he can do so, the burden of production shifts to defendant to "articulate some legitimate, nondiscriminatory reason" for its decision. McDonnell Douglas, 411 U.S. at 802. If the defendant meets this minimal burden, plaintiff must then "point to some evidence, direct or circumstantial, from which a factfinder could reasonably ... disbelieve [that] articulated legitimate reasons." Fuentes, 32 F.3d at 764.

23

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation by March 14, 2016. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto, but not later than March 28, 2016. See Fed.R.Civ.P. 72(b)(2). No extensions of time will be granted. Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February 29, 2016

24