| | |
|---|---|
| TIMOTHY MANGEL, ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> GRAHAM PACKAGING CO., L.P. ) <br> ) <br> *Defendant*. ) <br> ) <br> _____ ) | CIVIL CASE NO. 14-CV-0147-BR <br><br> ORDER |

## ORDER ADOPTING IN PART REPORT AND RECOMMENDATION AND DENYING MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant's Motion for Summary Judgment [29] and the Report and Recommendation of the Honorable Susan Paradise Baxter [41]. The Court, having reviewed the the briefs of the parties, the Report and Recommendation of the Honorable Susan Paradise Baxter, United States Magistrate Judge, Defendant's Objections, and the balance of the record, adopts in part the Report and Recommendation and denies Defendant's Motion for Summary Judgment.

### I. FACTUAL BACKGROUND

Plaintiff Timothy Mangel is a former employee of Defendant Graham Packaging Co. (hereinafter "Graham"). Beginning in 2005, Mangel worked as a Label Operator, a position which he worked in until terminated by Graham in October, 2013. Deposition of Timothy Mangel (hereinafter "Mangel Dep."), Pl.'s Statement of Facts ("SoF"), Docket No. 36, Ex. A at 54. As a Label Operator, Mangel was responsible for changing the rolls of labels on his assembly line, watching the machine to make sure it did not jam, and other duties. *Id.* at 47-48.

In 2010, Mangel was diagnosed as having neuropathy, a condition that causes the nerves in his muscles to die and his muscles to degenerate. *Id.* at 65. This degeneration has caused Mangel to slowly lose control of his arms and legs. *Id.* at 65, 87. Prior to his diagnosis, Mangel already walked with a limp and experienced weakness in his legs. *Id.* at 146, 148, 154. In 2012, Mangel began wearing leg braces. *Id.* at 73-75. Mangel also suffers from a degenerative bone disorder in his back, which was diagnosed in 2008. *Id.* at 81-83.

Several of Mangel's supervisors were aware that he had health issues. Robert Gabel, Dan Lutz, and Tina Stockton, three of Mangel's supervisors, stated that they had observed him walking with a limp. Deposition of Robert Gabel, Pl.'s SoF, Ex. DD at 35; Deposition of Tina Stockton, Pl.'s SoF, Ex. II at 28; Deposition of Dan Lutz ("Lutz Dep."), Pl.'s SoF, Ex. FF at 32. Between May and October of 2013, Mangel informed his supervisor Dan Lutz that he would need to take time off in the future because of flare-ups to his back condition. Mangel Dep. at 103-04; Lutz Dep. at 27. Mangel also told Stockton and Lutz that he had taken sick days in the past because of his back. Mangel Dep. at 114-15. According to Mangel, he also spoke with Dustin Craig, the plant manager, and informed him that he suffered from health conditions which required injections in his back and that he would need to take time off. Unemployment Compensation Board Hearing Transcript, Pl.'s SoF Ex. CC at 22-23. He also spoke to Craig about his anticipated need for FMLA leave to deal with his health issues. Mangel Dep. at 121-22, 134, 273-74, 280-81.[1]

---

[1] Craig, in his own deposition, remembered discussing FMLA leave generally but denied knowing about any of Mangel's disabilities during the course of his employment. Deposition of Dustin Craig, Def.'s SoF, Docket No. 31, Ex. 12 at 63-64, This testimony is inconsistent with Craig's testimony before the Unemployment Board of Review, wherein he admitted that he knew Mangel had health issues that needed to be resolved and that Mangel needed time off for this reason. Testimony of Dustin Craig at Unemployment Compensation Board Hearing, Pl.'s SoF, Ex. CC at 28-29.

Mangel was terminated effective October 10, 2013, due to an incident that occurred on October 8, 2013. Hourly Employment Status Notice, Pl's SoF, Ex. Y. The parties present differing accounts of the incident. Mangel and a colleague, Scott Swackhamer, were jointly running a production line. Mangel Dep. at 198-99. While Swackhamer was on a break, the line jammed for 10 to 15 seconds. *Id*. According to Mangel, his supervisor at the time, Tina Stockton, "came down screaming and yelling at me . . . ." *Id.* at 203. Mangel states that other operators did not get written up or terminated for similar incidents. *Id.* at 204. Mangel signed an incident report issued by Stockton. He gave as his reason for signing: "I was told you have to sign them, regardless of whether you agree with them or not, because all you are doing is agreeing that you read them." *Id.* at 205.

Graham's version of events differs substantially. In an incident report issued on October 8, 2013, Mangel's supervisor, Tina Stockton, stated that she noticed a jam in the production line on which Mangel was working. Incident Report, Def.'s SoF, Ex. 9 at 18. Stockton stated that she saw Mangel standing nearby the line. *Id.* Stockton stated that

> I walked over to the desk . . . and noticed a folded up piece of paper laying on the desk with someone's bills (tablet, car phone…) and the dollar amount totaled up at the bottom . . . I picked up the paper and said to [Mangel] are you kidding me? I come over to this (and pointed to the empty table) and you have time to be figuring your bills? I said to [Mangel] are you supposed to be doing this on company time to which [Mangel] replied no. I asked him if anyone has ever talked to him about this before, to which he replied yes. I then said to [Mangel], you need to make better decisions and picked up the piece of paper and left the line.

*Id.*

Mangel signed the incident report, although he denies that he was calculating bills or writing on a piece of paper. Mangel Dep. at 205. Stockton then approached the plant manager, Dustin Craig, and the production manager, Christopher Murray, and recommended that Mangel be terminated. Deposition of Christopher Murray, Pl.'s SoF, Ex. HH at 28. Murray's

3

recollection of the incident differs from that of Stockton (which was memorialized in the incident report); Murray recalls Stockton telling him that she had watched Mangel "for ten minutes while he was writing out bills." *Id.* at 29-30.

Craig then spoke with Mangel. According to Craig, Mangel admitted that he was "writing out some bills" while on duty. Testimony of Dustin Craig at Unemployment Compensation Board Hearing, Pl.'s SoF, Ex. CC at 9. Mangel counters that he had not been doing his bills, and that he had instead been attempting to manage the line while the other operator was gone. *Id.* at 14-15. Mangel was terminated two days after the incident. Deposition of Dustin Craig, Pl.'s SoF, Ex. BB at 52-54; Timeline of Reviews and Reprimands, Pl.'s SoF, Ex. X.

## II. PROCEDURAL HISTORY

Mangel filed suit against Graham on May 16, 2014, alleging discrimination and retaliation pursuant to the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA") as well as interference and retaliation pursuant to Family Medical Leave Act ("FMLA"). Graham filed the instant Motion for Summary Judgment.

On February 29, 2016, Magistrate Judge Baxter issued a Report and Recommendation that Graham's motion be granted in part and denied in part. Magistrate Judge Baxter recommended that Graham's motion be denied with respect to Mangel's claims of discrimination, failure to accommodate, and hostile work environment pursuant to the ADA/PHRA[2], and also be denied with respect to Mangel's claims of interference and retaliation pursuant to the FMLA. The Magistrate Judge recommended that Graham's motion be granted with respect to Mangel's retaliation claim pursuant to the ADA/PHRA.

---

[2] The ADA and PHRA are interpreted consistently and with the same standard for liability. *McDonald v. Pa. Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995). As such, the Court will evaluate Plaintiff's ADA and PHRA claims together.

4

On March 14, 2016, Graham filed Objections [42] to the Report and Recommendation. Mangel did not file objections, nor did he reply to Graham's objections.

### III. STANDARD

When a party files objections to the Report and Recommendation of a Magistrate Judge, the district court reviews *de novo* those portions of the Report and Recommendation to which objections have been specifically made. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 674-75. The district court may accept, reject, or modify the Report and Recommendation with or without objections having been filed. 28 U.S.C. § 636(b)(1).

Motions for summary judgment are evaluated pursuant to Federal Rule of Civil Procedure 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court "should review all of the evidence in the record . . . [and] draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### IV. ANALYSIS

Graham objects to each portion of the Magistrate Judge's Report and Recommendation other than the Magistrate Judge's recommendation that the Court grant summary judgment as to Mangel's ADA/PHRA-based retaliation claim. The Court reviews each claim and objection in turn.

## A. Mangel's ADA/PHRA Discrimination Claim

Mangel's ADA/PHRA discrimination claim is subject to the burden-shifting framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Pursuant to this framework, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by demonstrating that the plaintiff is disabled within the meaning of the ADA, is otherwise qualified to perform the essential functions of the job, and has suffered an adverse employment decision as a result of discrimination. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). Once a plaintiff makes out a *prima facie* case, there is a presumption of discrimination, and the burden shifts to the employer to produce evidence that the plaintiff was subjected to the adverse action for a legitimate, non-discriminatory reason. *Id.* If the employer can provide a legitimate, non-discriminatory reason for the adverse action, the burden of production returns to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's proffered reason is pretext and "unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). To demonstrate pretext, a plaintiff must point to evidence "direct or circumstantial from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Tomaso v. Boeing*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

Magistrate Judge Baxter concluded that Mangel had adequately set out a *prima facie* case of discrimination, thus shifting the burden to Graham to establish a legitimate non-discriminatory reason for Mange's termination. R&R, Docket No. 41 at 10-11. The Magistrate Judge then found that Graham had articulated a legitimate non-discriminatory reason for Mangel's termination, *i.e.*, the October 8, 2013 incident. *Id.* The Magistrate Judge went on to find that

Mangel, by contradicting Graham's account of the incident, had introduced sufficient evidence from which a reasonable factfinder could determine that Graham's proffered reason for terminating Mangel's employment was pretextual. *See supra*, p. 3-4. Accordingly, Magistrate Judge Baxter recommended denying summary judgment as to this claim.

As Magistrate Judge Baxter recognized in her Report and Recommendation, Mangel's version of the events surrounding his termination is at odds with Graham's version of the same events, thus creating a factual dispute between the parties. Because of this factual dispute, summary judgment is inappropriate and Graham's motion will be denied as to Mangel's claim of discrimination pursuant to the ADA and PHRA.

**B. Mangel's ADA/PHRA Failure to Accommodate Claim**

Under the ADA an employer may be found to have discriminated against an employee where the employer does not "make reasonable accommodations to the known physical or mental limitations of the individual unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer." *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)). Included in this "reasonable accommodation" is a requirement that the employer engage in an "interactive process" of accommodation and "assist in the search for appropriate reasonable accommodation and . . . act in good faith." *Taylor*, 184 F.3d at 312.

To demonstrate a failure to accommodate, an employee must provide evidence from which a reasonable factfinder could conclude that:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

7

*Williams*, 380 F.3d at 772 (quoting *Taylor*, 184 F.3d at 319-320).

Mangel's failure to accommodate claim is based upon his alleged request for sick leave pursuant to the FMLA. A request for FMLA leave may qualify as a request for accommodation under the ADA where, as here, the FMLA leave is requested because of the employee's serious health condition. *McCall v. City of Philadelphia*, 2015 WL 7274068, at *2 (3d Cir. Nov. 18, 2015).

Magistrate Judge Baxter found that there were genuine issues of material fact with respect to when and how Mangel requested the accommodation for his disability. *See* Report and Recommendation, Docket No. 40, at 13-16. In particular, while Mangel's timeline of events is not always clear, Mangel testified that between May and October of 2013 he spoke to the plant manager, Dustin Craig, about his anticipated need for FMLA leave to deal with his health issues. Mangel Dep. at 92-94, 105-06, 111-12, 120-22, 134, 242, 273-74, 280-8.[3] Mangel was told to speak to Graham's Human Resources Employee, Cassandra Salisbury, about FMLA leave, which he did. Mangel Dep. at 107-09, 111. Mangel never received any FMLA paperwork from Craig or Salisbury. Mangel Dep. at 72-73, 107-111.[4] A week later, his employment was terminated. A reasonable factfinder could determine from this evidence both that Mangel requested accommodation (in the form of future FMLA leave) and that Graham failed to make a

---

[3] Craig, in his own deposition, remembered discussing FMLA leave generally but denied knowing about any of Mangel's disabilities during the course of his employment. Deposition of Dustin Craig, Def.'s SoF, Docket No. 31, Ex. 12 at 63-64, This testimony is inconsistent with Craig's testimony before the Unemployment Board of Review, wherein he admitted that he knew Mangel had health issues that needed to be resolved and that Mangel needed time off for this reason. Testimony of Dustin Craig at Unemployment Compensation Board Hearing, Pl.'s SoF, Ex. CC at 28-29.

[4] Graham points out that Magistrate Judge Baxter's determination that Mangel requested an accommodation by asking about FMLA leave is inconsistent with Magistrate Judge Baxter's finding that, for the purposes of Mangel's retaliation claim, Mangel "did not actually request time off for any medical condition between May and October [of 2013]." Report and Recommendation, Docket No. 40 at 17. The Court discusses Mangel's retaliation claim in more depth *infra* p. 17-18.

good faith effort to assist Mangel in seeking said accommodation by never providing him with the appropriate paperwork to obtain FMLA leave and by terminating his employment prior to him receiving FMLA leave.

The Court has reviewed Graham's objections and agrees with the Report and Recommendation that disputed facts make this claim ineligible for summary judgment. Accordingly, Graham's motion will be denied as to Mangel's claim of failure to accommodate pursuant to the ADA and PHRA.

### C. Mangel's ADA/PHRA Hostile Work Environment Claim

A plaintiff makes out a discrimination claim based on a hostile work environment where the plaintiff provides evidence that:

> l) he is a qualified individual with a disability under ADA; 2) he was subject to unwelcome harassment; 3) the harassment was based on his disability or a request for accommodation; 4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment; and 5) the employer knew or should have known of the harassment and failed to take prompt effective remedial action.

*Lowenstein v. Catholic Health East*, 820 F. Supp. 2d 639, 646-47 (E.D. Pa. 2011) (citing *Walton v. Mental Health Ass'n of S.E. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999)). An employee need not "prove that she suffered injury or that her psychological well-being was seriously affected." *Walton*, 168 F.3d at 667.

Magistrate Judge Baxter found that Mangel had presented sufficient evidence to make out a claim of discrimination based on a hostile work environment. In his deposition testimony Mangel extensively discussed the "daily" harassment by "everybody in the plant" which continued for many years. Mangel Dep. at 3, 7, 41. According to Mangel, his workers made fun of his limp and leg braces, calling him "Forrest Gump," "cripple," "Gumby," and "crippled ninja." *Id.* at 144, 156. Mangel alleges that this harassment involved a supervisor, Jerry Gabel, who called Mangel "ratchet ass" and "Gumby" and mimicked Mangel's limp. *Id.* at 143, 149,

9

154-56. Mangel also provides a declaration from a co-worker, Nathan Woodruff, corroborating Mangel's testimony concerning the derogatory statements made by his co-workers. *See* Certification of Nathan Woodruff, Pl.'s SoF, Ex. L. Mangel testified that this harassment made him feel hurt, stressed, and eager to leave the workplace every day. Mangel Dep. at 264. According to Mangel, he complained to his supervisor Dan Lutz about the name-calling, but the harassment continued. Mangel Dep. at 150-163.

The Court finds that Mangel has presented sufficient evidence from which a reasonable factfinder could conclude that he suffered "severe and pervasive" harassment. Further, a reasonable factfinder could conclude that the harassment was sufficiently severe and pervasive to alter the conditions of Mangel's employment and to create an abusive working environment.[5] Finally, a reasonable factfinder could conclude that, based on Mangel's evidence, Graham knew or should have known about the harassment and failed to take "*effective* remedial action."

Accordingly, Graham's motion will be denied as to Mangel's claim of a hostile work environment pursuant to the ADA and PHRA.

**D. Mangel's Claims of Interference and Retaliation Pursuant to the FMLA**

The FMLA "entitle[s] employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). Once employees invoke rights granted under the FMLA, employers may not "interfere with, restrain, or deny the exercise of or attempt to exercise" these rights. 29 U.S.C. § 26 1 5(b )(I). Further, an employer may not "discharge or in any other manner discriminate against any individual" for invoking their FMLA rights. "The former provision is generally, if

---

[5] As grounds for comparison, in *Walton* the Court found that harassment was not "severe or pervasive" where the harassment consisted of isolated statements or actions on the part of the plaintiff's supervisor. *See Walton*, 168 F.3d at 671 (finding no harassment where supervisor "once told [the plaintiff] she was 'manic depressive'" and told her she would be fired if she did not attend a specific ceremony even though the plaintiff was agoraphobic). Similarly, in *Woodard v. PHB Die Casting*, 255 F. App'x 608, 608-09 (3d Cir. 2007) the court found no severe or pervasive hostile work environment where the plaintiff experienced only sporadic racist comments and heard about other comments second-hand.

imperfectly, referred to as 'interference' whereas the latter is often referred to as 'retaliation.'" *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3d Cir. 2012) (quoting *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005)).

1. **Interference**

Interference includes refusing to authorize FMLA leave as well as discouraging an employee from using leave. 29 C.F.R. § 825.220(b). An employer's failure to advise an employee of his rights to FMLA leave may also constitute interference. *See Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 143-44 (3d Cir. 2004).

With respect to interference, Magistrate Judge Baxter found that Mangel had adequately set forth facts from which a reasonable jury could find that Graham had interfered with Mangel's rights under the FMLA. Graham objects that Mangel did not "request" FMLA leave between May of 2013 and October 2013 and therefore did not provide adequate notice to Graham of his intention to invoke the FMLA. Specifically, Graham focuses on Mangel's statements at deposition that he did not have specific dates in mind to take FMLA leave when he spoke to his manager about said leave. Graham urges the Court to interpret Mangel's lack of specificity regarding dates as indicating that Mangel did not actually "need" time off for his health condition. Graham contends that Mangel therefore "never requested or needed FMLA leave," and therefore did not invoke his rights under the FMLA. Def.'s Objections, Docket No. 41 at 14.

Mangel has presented evidence that he did, in fact, request and have a need for FMLA leave. Mangel told his supervisors, Lutz and Stockton, that he had previously taken time off because of his back condition. Mangel Dep. at 103-04, 114-15; Lutz Dep. at 27. Mangel also told Craig that he had health conditions which required him to take time off for medical treatment. Unemployment Compensation Board Hearing Transcript, Pl.'s SoF Ex. CC at 22-23. Mangel states that he requested FMLA leave from Craig some time shortly after he was issued his 2013

11

performance evaluation at the end of April, 2013.  Mangel Dep. at 121-22, 134, 273-74, 280-81; Deposition of Dustin Craig, Pl.'s SoF, Ex. BB at 68-70.  According to Mangel he brought up his need for FMLA leave because he did not want to get another poor review based on absences.  Mangel Dep. at 99-100.[6]  Mangel testified that he did not have any specific dates in mind when he spoke to Craig, but, rather, that he was generally "worried about" unexpectedly taking time off of work to deal with his health conditions states.  *Id.* at 101.

Mangel states that he "repeatedly" asked for FMLA leave during the next three weeks.  Mangel Dep. at 273-81.  At some point Craig referred Mangel to Cassandra Salisbury, Graham's Human Resources Employee.  *Id.* at 107-08.  According to Mangel, he asked Salisbury for FMLA paperwork about a week after he spoke with Craig.  *Id.* at 109.  Mangel testified that he never received the paperwork and was fired roughly a week after he asked Salisbury for FMLA paperwork.  *Id.* at 110-11.[7]

Mangel has presented sufficient evidence from which a reasonable factfinder could conclude that Graham interfered with his ability to take FMLA leave.  Resolving all factual disputes and inferences in Mangel's favor, a reasonable factfinder could conclude that Mangel brought his medical issues to Graham's attention and even explicitly invoked the FMLA.  In response, Graham failed to provide Mangel information concerning his FMLA rights and may have discouraged Mangel from taking FMLA leave.

Moreover, Graham's focus on Mangel's lack of specific dates for his future FMLA is misplaced.  "[T]he regulations are clear that employees may provide FMLA qualifying notice before knowing the exact dates or duration of the leave they will take."  *Sarnowski*, 510 F.3d at

---

[6] A portion of Plaintiff's performance reviews were based on attendance and punctuality.  Performance Review, Pl.'s SoF, Ex. 10.

[7] Plaintiff later estimated the time between his initial requested for FMLA leave and his termination as "within a few months."  Mangel Dep. at 121-22.

402. "The right to actually take . . . leave pursuant to the FMLA includes the right to declare an intention to take such leave in the future." *Id.* (quoting *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001)). Indeed, employees properly invoke the FMLA where they "apprise their supervisors of an *anticipated* need for leave. Such openness maximizes' [sic] employers' ability to plan their staffing needs." *Sarnowski*, 510 F.3d at 403 (emphasis added). Mangel has presented sufficient evidence from which a reasonable factfinder could conclude that he provided notice to Graham of his intent to take future FMLA leave.

Accordingly, Graham's motion will be denied with respect to Mangel's FMLA interference claim.

### 2. Retaliation

A plaintiff makes out a claim for retaliation under the FMLA by demonstrating that "1) he invoked his right to FMLA-qualifying leave; 2) he suffered an adverse employment decision; and 3) the adverse action was causally related to the invocation of FMLA rights." *Lichtenstein*, 691 F.3d 294, 302 (3d Cir. 2012). To demonstrate causation, a plaintiff must point to evidence "sufficient to create an inference that a causative link exists between [the plaintiff's] FMLA leave and [his or her] termination." *Id.* at 302 (citing *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 279–81 (3d Cir. 2000)). "When the 'temporal proximity' between the protected activity and adverse action is 'unduly suggestive,' this 'is sufficient standing alone to create an inference of causality and defeat summary judgment.'" *Id.* (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,* 503 F.3d 217, 232 (3d Cir. 2007)).

Here, Mangel has presented evidence, discussed *infra* pp 13-15, that he invoked his right to FMLA leave. Further, Mangel presents evidence that, within a week of his final request concerning FMLA leave, he was terminated. Mangel Dep. at 110-11. Such short temporal proximity is "unduly suggestive" and is sufficient to create an inference of causality.

Mangel has presented sufficient evidence from which a reasonable factfinder could conclude that he (1) invoked his right to FMLA leave; (2) suffered an adverse action (termination); and (3) there was a causal connection between Mangel's invocation of his FMLA rights and Graham's termination of Mangel. Accordingly, Graham's motion will be denied with respect to Mangel's FMLA retaliation claim.

### E. Mangel's ADA/PHRA Retaliation Claim

Magistrate Judge Baxter recommends that Graham's motion be granted with respect to Mangel's claim of retaliation pursuant to the ADA/PHRA. Graham does not object to this finding. However, the Court must review this claim to ensure consistency with the remainder of the Court's findings.

Retaliation claims under the ADA/PHRA utilize the same burden-shifting *McDonnell Douglas Corp.* standard as claims of discrimination: a plaintiff may establish a *prima facie* claim of retaliation under the ADA/PHRA by demonstrating (1) protected employee activity; (2) adverse action by the employer that occurs after or contemporaneously with the protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997)). Once the *prima facie* claim is established, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. *Woodson*, 109 F.3d at 920 n.2. If the employer's burden is satisfied, the burden once again shifts back to the employee to provide sufficient evidence from which a reasonable factfinder could conclude that the employer's explanation is false and that retaliation was the reason for the adverse employment action.

Here, Magistrate Judge Baxter found that Mangel had failed to establish a *prima facie* case of retaliation because Mangel did not produce evidence that he engaged in protected activity, that

14

is, providing adequate notice of his request for FMLA leave. Magistrate Judge Baxter accepted Graham's argument that Mangel "neither requested nor needed FMLA leave" from the period of May 2013 to October 2013. Def.'s Objections, Docket No. 41 at 2.

As noted above, a request for FMLA leave due to the employee's own serious health condition qualifies as a request for accommodation under the ADA, and thus qualifies as "protected employee activity." *McCall v. City of Philadelphia*, 2015 WL 7274068, at *2 (3d Cir. Nov. 18, 2015). As already discussed extensively by the Court *supra*, p. 11-13, the Court has determined that Mangel has presented sufficient evidence from which a reasonable factfinder could conclude that he provided notice to Graham of his intent to take future FMLA leave. Accordingly, Mangel engaged in protected employee activity. Mangel has also established that an adverse action was taken against him, namely his termination. Finally, as discussed *supra*, p. 16, Mangel has established a causal connection between his asking for FMLA leave and his termination due to the unduly suggestive temporal proximity between the two events.

The Court has already discussed Graham's presented non-discriminatory reason for Mangel's termination and Mangel's respnse that Graham's asserted explanation for Mangel's termination was pretextual. *See, supra* p. 6-7. The Court finds that Mangel has presented sufficient evidence from which a reasonable factfinder could conclude that Mangel was terminated in retaliation for his request for FMLA leave. Accordingly, the Court disagrees with the Report and Recommendation's conclusion as to this claim and will deny Graham's motion for summary judgment with respect to Mangel's ADA/PHRA retaliation claim.

## V. CONCLUSION

For the reasons stated in this order, the Court, having reviewed the complaint, the briefs of the parties, the Report and Recommendation of the Honorable Susan Paradise Baxter, United

States Magistrate Judge, Defendant's Objections, and the balance of the record, does hereby order that:

(1) The Court ADOPTS IN PART the Report and Recommendation.

(2) Defendant's Motion for Summary Judgment is DENIED with respect to each of Plaintiff's claims.

(3) The Clerk shall send copies of this Order to the parties, and to Magistrate Judge Baxter.

**IT IS SO ORDERED.**

Dated: April 1, 2016.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE